UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 07-118-JBC

JERRY FRANCE,                                                                                   PLAINTIFF,

V.                              MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                              DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB").  DE 9; DE 10.  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.      Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

1

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility.  *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

## II.     The ALJ's Determination

At issue is the plaintiff's third application for DIB and SSI payments, originally filed on August 11, 2003 and claiming an onset date of November 8,

2001.[1]  At the time of the alleged disability onset date in the plaintiff's third application, he was forty-two years old and had previous work experience in the timber and coal-mining industries.  AR 23.  In his third application for benefits, the plaintiff alleges disability due to problems with his back, eyes, arm, and liver; diabetes; anxiety; and sleeplessness.  AR 23.

The ALJ denied the plaintiff's third application for benefits on March 3, 2006, AR 31, and the Appeals Council denied his appeal on February 22, 2007, AR 9, subsequent to which he filed this appeal with the court.  At Step 1, the ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset date.  AR 30.  At Step 2, the ALJ found that the plaintiff's impairments qualify as "severe" under 20 CFR §§ 404.1520(c) and 416.920(c).  AR 30.  Specifically, the ALJ found the plaintiff "has the following medically determinable impairments: diabetes mellitus poorly controlled; hypertension; chronic obstructive pulmonary disease; major depressive disorder[;] and borderline intellectual funtioning."  AR 24.  At Step 3, the ALJ found that the plaintiff's impairments, which consist of "borderline intellectual functioning, . . . depression[,] and anxiety," do not meet or equal a listing in the Listing of Impairments and that the plaintiff "retains the residual functional capacity ["RFC"] for a reduced range of light exertional work."  AR 26, 30.  At Step 4, the ALJ found that the plaintiff

---

[1] The plaintiff's first application was appealed to the Appeals Council, which upheld denial of benefits by the ALJ, and the plaintiff's second application was appealed to this court, which upheld the ALJ's decision in that case.

cannot perform past relevant work. AR 30. And, at Step 5, the ALJ found that with the plaintiff's RFC, there exist a significant number of jobs in the national economy that the plaintiff could perform, including inspecting; grading and sorting; and bench assembly jobs. AR 30.

## III.     Legal Analysis

The plaintiff first argues that the ALJ lacked sufficient basis for his decision because he did not give sufficient weight to the opinion of Dr. Roy Varghese as a treating physician; the "uncontradicted opinion" of pulmonologist Dr. Imitiaz Hussain; and the opinions of neuropsychiatrist Dr. P.D. Patel and psycholgists Dr. Christopher Catt, and Mr. Phil Pack, M.S.

An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If a medical opinion of a treating physician is not contradicted, it is entitled to complete deference. *Cohen v. Sec'y of Dept. of Health and Human Servs,* 964 F.2d 524, 528 (6th Cir. 1992). If the opinion of a treating source is not accorded controlling weight, the ALJ must consider factors such as the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and specialization of the source in determining the weight to give the opinion. *Wilson*

*v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). An ALJ may, however, reject the opinion of a treating physician when that opinion is not sufficiently supported by medical findings, but he must give good reasons for the weight assigned to the treating source's opinions. 20 C.F.R. § 404.1527(d)(2); *Wilson*, 378 F.3d at 544.

Dr. Varghese has treated the plaintiff since 2003 for a variety of ailments, as the plaintiff documents in his brief, *see* DE 9-3, 7-8, but the plaintiff does not point to any specific opinion stated by Dr. Varghese. Moreover, the ALJ accurately cites reports by Dr. Varghese that suggest the plaintiff was "making progress" on or had "under control" many of his ailments, *see* AR 26, 28 (citing, *e.g.*, AR 315). Therefore, the ALJ did not err in failing to defer to Dr. Varghese's opinion that the plaintiff was disabled because Dr. Varghese never stated such an opinion and, even if he did state such an opinion, it would not be "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2).

Dr. Patel, Dr. Catt, and Mr. Pack performed consultative examinations. The opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The plaintiff cites two forms filled out by Dr. Patel after a psychiatric consultation on April 7, 2005. The first form evaluated the plaintiff's physical ability to do work-related activities. Dr. Patel did note certain physical limitations, such as an ability

to lift only twenty pounds occasionally and ten pounds frequently during the work day as well as a maximum ability to sit for two hours and to stand for two hours during an eight-hour day and an ability only occasionally to twist, stoop (bend), crouch, climb stairs, or climb ladders. AR 347-48. The findings of Dr. Patel on this form are not entitled to added weight, however, because they relate to physical activities, which are outside of his area of medical specialty as a neuropsychiatrist. *See* 20 C.F.R. § 404.1527(d)(5). Moreover, Dr. Patel does not cite specific findings from his examination that support his conclusions. *See Warner v. Comm'r of Social Security*, 375 F.3d 387, 391 (6th Cir. 2004) (noting that such medical conclusion must be "based upon objective medical evidence").

Dr. Patel's findings regarding the plaintiff's mental ability to do work-related activities are under-supported. While Dr. Patel checked boxes indicating "Poor or None" for the plaintiff's ability to deal with several normal stresses in the workplace, AR 349, in the narrative section of his report he did not provide such a negative assessment and there is no indication that the plaintiff had any problem dealing with the stresses of the consultative exam. *See* AR 345. The ALJ could have properly discounted Dr. Patel's somewhat contradictory findings, given that Dr. Patel performed only a consultative examination and that the ALJ's assessment offers a low assessment of the plaintiff's mental abilities. *See* 20 C.F.R. § 404.1527(d); AR 27-28 (finding that the plaintiff could "understand basic oral instructions in an environment requiring simple repetitive tasks" and could "relate

adequately to routine situations"). Moreover, Annette Freel, M.S., a licensed psychological associate, found that the plaintiff's only limitations that were greater than "slight" were "marked" problems with carrying out detailed instructions and making judgments about simple work-related decisions. AR 361-62.

The plaintiff contends that the ALJ did not give sufficient weight to the opinion of Dr. Hussain, a point the defendant does not address. As the ALJ noted, Dr. Hussain concluded that, due to his lung problems, the plaintiff did not have the ability "to perform the work of a coal miner or comparable work in a dust-free environment because of severe dyspnea and wheezing on exertion." AR 25. This finding by Dr. Hussain is consistent with the ALJ's finding that the plaintiff "is unable to perform any of his past relevant work," AR 30, and the ALJ adopted the VE's finding at Step 5 that the plaintiff's RFC allows him to perform jobs including "inspecting, grading and sorting and bench assembly work." AR 31. Finally, the ALJ found that the plaintiff's chronic obstructive pulmonary disease is "severe," AR 24, a finding that is consistent with Dr. Hussain's conclusion that the plaintiff's pulmonary impairment is "Severe" instead of "Totally Disabl[ing]." AR 142. The ALJ did not give insufficient weight to Dr. Hussain's findings where he stated Dr. Hussain's findings in his opinion and they are consistent with the ALJ's ruling.

The plaintiff also argues that the ALJ's discounting of his allegations of disabling pain was improper. The regulations require the ALJ to assess the extent to which allegations of pain "can reasonably be accepted as consistent with the

7

objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). As noted above, Dr. Varghese did not place physical limitations on the plaintiff commensurate with his complaints of trouble stooping, being able to lift only ten to fifteen pounds without bending, being able to stand only fifteen to twenty minutes, and being able to sit for only twenty minutes at most. *Compare* AR 458-59, 466, *with* AR 425-444. Moreover, Robyn Napier, C.S.W., the plaintiff's counselor and treating source at the Kentucky River Community Care, Inc., twice noted that the plaintiff was "doing o.k.," AR 390, 395, was "sleeping better," AR 390, and was "doing fairly well." AR 391. Because these findings by his treating sources are not consistent with allegations of debilitating pain, the ALJ did not err in discounting them.

Finally, the plaintiff argues that he meets Listing 12.05(c) because Mr. Pack diagnosed him with a verbal IQ of 69 and a third-grade reading level. After a consultative mental examination on August 6, 2005, however, Ms. Freel found that the plaintiff's full-scale IQ score of 56 was likely not reflective of the plaintiff's actual abilities, "based on the results of the Rey 15 [memory test] as well as a history of 20 years employment within the coal mine industry." AR 357. Moreover, Ms. Freel noted only "marked" problems with carrying out detailed instructions and making judgments about simple work-related decisions and did not note any "extreme" limitations. AR 361-62. These findings by Freel provide substantial evidence in support of the ALJ's finding that the IQ scores diagnosed by

Pack "clearly are not valid in light of previous IQ test results and in light of twenty years employment as a coal miner." AR 28.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment, DE 10, is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment, DE 9, is **DENIED**.

Signed on August 28, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY